# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff,

CASE NO.:

v.

SHARON LEE WEBER, as personal
representative of the ESTATE OF
THOMAS NICHOLAS WEBER, JR.

        Defendant,        /

## PLAINTIFF'S COMPLAINT WITH DECLARATORY RELIEF REQUESTED AND DEMAND FOR JURY TRIAL

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm"), brings this action for declaratory relief against Defendant SHARON LEE WEBER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS NICHOLAS WEBER, JR, ("Personal Representative"), and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, for the purpose of determining questions of actual controversy between the parties as to underinsured/uninsured motorist coverage available under a Florida automobile insurance policy.

2. The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney's fees. Specifically, at issue are uninsured/underinsured motorist benefits of $100,000.00 under a Florida automobile liability policy issued by State Farm to decedent Thomas N. Weber a/k/a Thomas Nicholas Weber, Jr., and Sharon Weber a/k/a/ Sharon Lee Weber. Demand has been made by the Personal Representative for payment of the $100,00.00 underinsured motorist limits for the death of decedent Thomas Weber.

3. Plaintiff State Farm is a mutual interest insurance company organized under the laws of the state of Illinois, with its principal place of business in Illinois, such that State Farm is a citizen of State of Illinois.

4. On the date of the accident given rise to the claim in question, decedent Thomas Nicholas Weber, Jr. ("decedent Weber") was a citizen of the state of Florida.

5. The Estate of Thomas Nicholas Weber, Jr. was opened in Clay County, Florida. Shannon Lee Weber was appointed personal representative of such Estate. Pursuant to 28 U.S.C. § 1332(c), the citizenship of the legal representative is that of the decedent. Accordingly, the Personal Representative is a citizen of the state of Florida.

6. This Court has jurisdiction under 28 U.S.C. § 1332 because the citizenship of Plaintiff State Farm and Defendant Personal Representative are diverse, and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this division of the Middle District of Florida pursuant to 28 U.S.C. § 1391, as the accident resulting in the claims for underinsured/uninsured motorist benefits under the State Farm policy occurred in Clay County, Florida, the Estate is open in Clay County, Florida, the Personal Representative resides in Clay County, Florida, and the policy was issued in Clay County, Florida.

## GENERAL ALLEGATIONS

8. On December 14, 2019, decedent Thomas Nicholas Weber, Jr., was a passenger in a 2016 E-Z-Go RXV (V-1) golf cart (the "Golf Cart") traveling on an approximately eight-foot-wide golf cart path at Eagle Harbor Golf Course when he fell from the golf cart ("the Accident"), sustaining injuries which State Farm is advised resulted in his death.

9. On December 14, 2019, the only State Farm Policy in effect issued to decedent which provided uninsured/underinsured motorist benefits was Policy number 964 2084-D05-59H (the "Policy"). The Policy was issued in the state of Florida to Sharon Weber and Thomas N. Weber and provided stacking uninsured/underinsured motorist benefits of $100,000.00 per person, $300,000/00 per accident, according to the express terms and conditions of the Policy and Florida Law. A true and correct copy of the Policy is attached hereto as Exhibit "A."

10. The Personal Representative has made a claim for underinsured motorist benefits under the Policy arising from the Accident and has demanded payment and tender of the $100,000.00 in underinsured motorist coverage limits under the Policy for the death of decedent Weber.  The Personal Representative asserts that coverage exists under the Policy, and that State Farm cannot deny uninsured/underinsured motorist coverage based on the language of the policy according to Florida law.

11. State Farm disagrees with this interpretation of the Policy by the Personal Representative, and instead asserts that no uninsured/underinsured motorist coverage is afforded under the express terms of the policy and under Florida law for claims arising from the Accident as the Golf Cart is not an "uninsured motor vehicle," as defined by the Policy.

## POLICY LANGUAGE AT ISSUE

12. The Policy provides for uninsured/underinsured motorist benefits according to the express terms of the policy, stating in part:

> **Insuring Agreement**
> 1. ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***.
> 2. The ***bodily injury*** for which ***we*** will pay compensatory damages must be:
>    a. sustained by an ***insured***;
>    b. caused by an accident that involves the operation, maintenance, or use of an ***uninsured motor vehicle***; and

4

      c. a serious injury as described in section 627.737(2) of the Florida Insurance Code before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience.

Thus, under the insuring agreement for uninsured/underinsured coverage, the accident causing the "bodily injury" must involve the operation, maintenance, or use of an "uninsured motor vehicle" as defined by the Policy.

    13.    "Uninsured motor vehicle" is defined in the Policy:

*__Uninsured Motor Vehicle__* means a land motor vehicle and a trailer attached to such land motor vehicle:

1. the ownership, maintenance, and use of which is:
   a. neither insured, nor self-insured, nor bonded for bodily injury liability at the time of the accident; or
   b. insured, self-insured, or bonded for bodily injury liability at the time of the accident; but
      (1) the limits are less than required by the financial responsibility act of the state of Florida;
      (2) the limits of liability of the insurance, self-insurance, or bond are less than the damages for *__bodily injury__* sustained by the *__insured__*; or
      (3) the entity providing the financial responsibility:
         (a) denies that it provides liability coverage for compensatory damages that result from the accident; or
         (b) is or becomes insolvent; or
2. the owner or driver:
   a. of which could not reasonably have been identified;
   b. remains unknown; and
   c. that causes *__bodily injury__* to the *__insured__*.

5

>    ***Uninsured Motor Vehicle*** does not include a land motor vehicle or trailer:
>
>    \* \* \*
>
>    3. designed for use primarily off public roads except while on public roads;
>
>    \* \* \*

14.     It is State Farm's position that the Golf Cart which decedent Weber was occupying at the time of the Accident is not an "uninsured motor vehicle" as defined by the Policy as it was "designed for use primarily off public roads" and was not being operated "on public roads" at the time of the Accident."

15.     Specifically, the Golf Cart in the December 14, 2019, accident was a conventional Golf Cart as defined in § 320.01(22), Florida Statutes.  The Golf Cart was designed for use primarily off public roads.  Furthermore, the Accident occurred on a private golf cart path at Eagle Harbor Golf course, which path was approximately eight-feet-wide, bordered by a grass shoulder.  Golf cart paths do not constitute a public road, and accordingly, golf carts are permitted to be operated on such golf cart paths.

16.     Accordingly, no uninsured/underinsured motorist coverage exists for the claim of the Personal Representative arising out of the operation, use or maintenance of the Golf Cart as it does not constitute an "uninsured motor vehicle," under the express terms of the Policy.

17. The Personal Representative disagrees, asserting denial of uninsured/underinsured motorist coverage for the Accident is incorrect as a Florida policy is required to provide reciprocal liability and uninsured/underinsured motorist coverage and cannot provide uninsured/underinsured motorist coverage less than liability coverage afforded under the policy.

18. State Farm contends the Policy definition of "uninsured motor vehicle" is valid, consistent with Florida law as to uninsured/underinsured motorist benefits, and enforceable as a matter of law.

19. Specifically, Florida law does not require uninsured/underinsured motorist coverage be provided for the Golf Cart.

20. Furthermore, the Policy does not provide uninsured/underinsured motorist coverage that is less than the liability coverage under the Policy. Liability coverage would also not be extended under the Policy for an insured's operation or use of the Golf Cart as the Golf Cart would not meet the definition of "car", to wit, a "land motor vehicle with four or more wheels, designed for use primarily on public roads."

21. Thus, the Policy provides reciprocal liability and uninsured/underinsured motorist coverage for the circumstances of the Accident, in that the operation or use of the Golf Cart would not be covered for

liability or uninsured/underinsured coverage. Accordingly, the Policy provisions defining uninsured motor vehicle are valid.

22. There is a bona fide dispute and actual, justiciable, genuine controversy between the parties as to whether the Policy provides uninsured/underinsured motorist coverage for the Personal Representative's claim arising out of the December 14, 2019, accident.

23. State Farm is in doubt as to the availability of uninsured/underinsured motorist coverage under the facts of this case and as to its rights, duties, status or other equitable or legal relations under the Policy and is entitled to obtain a declaration of such rights, duty, status and other equitable or legal relations.

WHEREFORE, State Farm Mutual Automobile Insurance Company respectfully requests that this Court:

(a) take jurisdiction over this case, its parties, and its subject matter;

(b) enter a declaratory judgment which:

(1) interprets the Policy;

(2) applies the court's interpretations to the facts of this case;

(3) determines the respective rights, status, duties and other equitable or legal relations of the parties to this action;

(4) specifically declares that no uninsured/underinsured motorist benefits under the Policy, number 964 2084-D05-59H, are available to Sharon

Weber as personal representative of the Estate of Thomas J. Weber, Jr. for the claim arising from the December 14, 2019, Accident; and,

(c) grant any further necessary or proper relief as this court deems equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues so triable.

Dated this 9th day of February 2021.

             **MARKS GRAY, P.A**.

             */s/ Rhonda B. Boggess*
             **CAROL M. BISHOP, Lead Counsel**
             Florida Bar No. 821357
             CBishop@marksgray.com
             **RHONDA B. BOGGESS**
             Florida Bar No.: 822639
             RBoggess@marksgray.com
             1200 Riverplace Blvd., Suite 800
             Jacksonville, FL 32207
             Phone: (904) 398-0900
             Facsimile: (904) 399-8440

             *Counsel for Plaintiff, State Farm*
             *Mutual Automobile Insurance Co.*